```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MERLE BRUGMAN,                                  :

                Plaintiff,                      :    REPORT AND RECOMMENDATION

        -v.-                                    :    15 Civ. 7276 (PKC) (GWG)

COMMISSIONER OF SOCIAL SECURITY,                :

                Defendant.                      :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Merle Brugman brought this pro se action to review a final decision of the Commissioner of Social Security denying Brugman supplemental security income and disability insurance benefits. The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] Despite being given several opportunities to do so, Brugman has not made any submissions opposing the motion.

I. BACKGROUND

  A. Procedural History

Brugman filed for disability benefits on September 25, 2012. See Administrative Record, filed Mar. 18, 2016 (Docket # 11) ("R."), at 103-12. The Social Security Administration ("SSA") denied Brugman's application on November 29, 2012. R. 71-77. Brugman requested a hearing before an Administrative Law Judge ("ALJ"). R. 79-80. A hearing was held on December 12, 2013. R. 29-46. In a February 25, 2014, decision, the ALJ found that Brugman

---

[1] See Notice of Motion, filed Mar. 18, 2016 (Docket # 12); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed Mar. 18, 2016 (Docket # 13) ("Def. Mem.").

1

was not disabled. R. 25. Brugman requested review of the ALJ's decision, see R. 12-13, and on April 10, 2015, the Appeals Council denied that request, making the ALJ's determination the Commissioner's final decision, R. 6-9. Brugman brought this civil action on September 14, 2015, to review that final decision.

    B.  <u>The Hearing Before the ALJ</u>

At the hearing before the ALJ, Brugman, who was not represented, testified that she became disabled in November 2011. See R. 34. Brugman had worked for a Macy's department store up until that time period. See R. 34-36.[2] After leaving her employment with Macy's, Brugman looked for a job "working in a shelter or a pantry" until March 2012, while also receiving unemployment payments. R. 36-37. She earned "a little money" at the end of 2012 working for the City of New York's Board of Elections. See R. 34-35.

Brugman said she had no history of drug or alcohol abuse, but admitted to using marijuana in the past. R. 37-38. Brugman testified that she had hammertoe surgery "in the early 90s." R. 38. At the time of the hearing, Brugman continued to use Tramadol for back and knee pain. Id. Tramadol produced no side effects, though the efficacy of its pain reduction varied. Id. Brugman took Lisinopril for hypertension, though she stated it did not control her hypertension because at "appointments . . . [her] pressure seem[ed] . . . higher than . . . normal." See id. Brugman's doctors had recently prescribed her a higher dose of Lisinopril. See R. 38-39.

Brugman took Ventolin for her asthma, which she needed help with "more than ever now." R. 39. Brugman's prescribed asthma medication varied in its ability to control her

---

    [2] Documents completed by Brugman show that she worked at a pharmacy from 2004 to 2009 and as a front desk clerk at a YMCA from 1997 to 2001. R. 58, 169.

asthma-related symptoms. Id. Whereas Brugman at one time could "walk maybe like two blocks without breathing [problems]," at the time of the hearing she could only "walk a block [before she had] to stop because [she] need[ed] to [use her asthma] pump." See id.

Brugman attributed her inability to work to her difficulty in walking, drowsiness induced by her medications, and her back pain. See R. 39-40. Brugman also said that her asthma limited her ability to work because "everywhere is crowded, everywhere and stuff like that [makes it] hard to breathe." See R. 40. Unrelated to her asthma, Brugman's "fingers get cramped and they'll stay like that." Id.

As to her back pain, Brugman testified it was "unbearable" and was worst when she bent or stretched. See id. To alleviate the pain, Brugman took Tramadol and "Tylenol COD number 3." R. 40-41. Brugman would take three Tylenol per week and they made her "feel relaxed." R. 41. Brugman said she could sit for three hours in an eight-hour workday and stand for one hour. See id. Brugman could not estimate how many pounds she could lift, but stated that she could lift a gallon of milk. Id. On an average day, Brugman said she would wake up, take her medication, eat something, and try to walk for exercise. R. 41-42. When she walked for exercise, she could only walk half a block. R. 42. Brugman said she was "using [her asthma] pump more than ever now." See id.

Brugman also testified about a semi-hysterectomy she had on May 17, 2013. R. 43-44. The reason for her semi-hysterectomy was that Brugman had a pre-cancerous cyst "on the fibroid." R. 44-45. This cyst had apparently caused her to have back pain over a two-year period, resulting in emergency room visits. Id.

C.  Medical Evidence

The medical evidence in the record is described accurately in the Commissioner's brief. See Def. Mem. at 4-13. We discuss the evidence relevant to our conclusions in Section III below.

D.  The ALJ's Decision

The ALJ denied Brugman's application for benefits in a written decision on February 25, 2014. R. 14-25. The ALJ found that Brugman had a "severe combination of impairments," including "asthma, obesity, hypothyroidism, plantar fasciitis, and an unspecified impairment of the back." R. 19. Nonetheless, the ALJ found that Brugman did not have an "impairment or combination of impairments that [met] or medically equal[ed] the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." R. 19-20. The ALJ noted that none of Brugman's physicians had "indicated clinical signs or diagnostic findings that me[t] or [were] comparable to the severity requirements of a listed impairment." R. 20.

The ALJ found that Brugman maintained the "residual functional capacity to perform light work . . . including occasional stooping and occasional exposure to respiratory irritants." Id. The ALJ found that Brugman could "stand or walk for six of eight hours in a work day, frequently lift and carry objects weighing 10 pounds, occasionally lift and carry up to 20 pounds, push/pull to her lifting/carrying capacity, and balance and ambulate on level surfaces without an assistive device." Id. The ALJ explained this conclusion through an extensive review of Brugman's medical history (discussed further below). R. 20-24.

In light of the finding regarding her residual functional capacity, the ALJ found that Brugman was "capable of performing her past relevant work as a sales attendant, store cashier,

4

and hotel clerk." See R. 24-25.  Thus, the ALJ found that Brugman was not under a disability, as defined by the Social Security Act, from November 22, 2011, to the date of the decision.  R. 25.

II.  GOVERNING LAW

    A.  Scope of Judicial Review Under 42 U.S.C. §§ 405(g) and 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Carter, 221 F.3d 126, 131 (2d Cir. 2000)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Selian, 708 F.3d at 417; Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (quoting Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009)).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks omitted) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)). Thus, "[i]f the reviewing court finds substantial evidence to support the

5

Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citing Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982)).  The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault, 683 F.3d at 447-48 (citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. at 448 (emphasis in original) (internal quotation marks omitted) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (internal quotation marks omitted) (quoting Hernandez v. Barnhart, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007)).

    B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord id. § 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980); Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980); and Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978)); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Wilson v. Colvin, 107 F. Supp. 3d 387, 400 (S.D.N.Y. 2015).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 404.1520(a)(4); see also Burgess, 537 F.3d at 120 (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 404.1520(c). Third, if the claimant's impairment is severe and "meets or equals" one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, and "meets the duration requirement," the claimant must be found disabled. Id. § 404.1520(a)(4)(iii). Fourth, if the claimant's impairment does not meet or equal one of the listed impairments, or does not meet the

duration requirement, the Commissioner must review the claimant's residual functional capacity to determine if the claimant is able to do the work he or she has done in the past, i.e., "past relevant work." Id. § 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity, in addition to his or her age, education, and work experience, permit the claimant to do other work. Id. § 404.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all of these steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

### C. The "Treating Physician" Rule

In general, the ALJ must give "more weight to opinions" of a claimant's treating physician when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (the ALJ must give "a measure of deference to the medical opinion of a claimant's treating physician"). Treating physicians "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ must accord "controlling weight" to a treating physician's medical opinion as to the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Id. §§ 404.1527(c)(2), 416.927(c)(2). Inversely, the opinions of a treating physician "need not be given controlling weight where they

are contradicted by other substantial evidence in the record." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted); accord Selian, 708 F.3d at 418 ("The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record.") (citing Burgess, 537 F.3d at 128; and Green-Younger, 335 F.3d at 106-07).

    D.  Credibility Determinations

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citing Perales, 402 U.S. at 399; McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980); and Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). Thus, the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (summarizing and citing with approval a holding in Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)). Nonetheless, when discounting a claimant's credibility regarding her residual functional capacity, regulations impose some burden on the ALJ to explain her decision. As the Second Circuit has stated:

> When determining a claimant's [residual functional capacity], the ALJ is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929; see McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

Genier, 606 F.3d at 49.

The SSA has issued regulations relating to reports of pain or other symptoms affecting

9

the ability to work by a claimant for disability benefits. 20 C.F.R. §§ 404.1529(c), 416.929(c). These regulations provide, inter alia, that the SSA "will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." Id. § 404.1529(c)(2); accord id. § 416.929(c)(2). The regulations also provide that the SSA "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence." Id. §§ 404.1529(c)(4), 416.929(c)(4).

Where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll, 705 F.2d at 643); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). The ALJ must make this determination "in light of medical findings and other evidence[] regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (internal quotation marks omitted) (quoting McLaughlin, 612 F.2d at 705). However, where an ALJ gives specific reasons for finding the claimant not credible, the ALJ's credibility determination "is generally entitled to deference on appeal." Selian, 708 F.3d at 420 (citing Calabrese v. Astrue, 358 F. App'x 274, 277 (2d Cir. 2009) (summary order)). Thus, "[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

III. DISCUSSION

While Brugman made no response to the Commissioner's motion, we have examined the record and find that the decision was supported by substantial evidence.

As the ALJ noted, R. 21, Brugman had sought treatment at St. Luke's Hospital for right foot pain prior to her November 22, 2011, onset date, see R. 279-82. Brugman visited St. Luke's on August 9, 2011, complaining of moderate foot pain that was "aggravated by movement, pressure, standing and walking." R. 279. Examination of the foot showed tenderness as well as some erythema (or redness). R. 280. A neurological exam found that Brugman's gait was normal. R. 281. The physician's diagnosis was plantar fasciitis.[3] Id. A doctor prescribed Motrin and fifteen tablets of acetaminophen with codeine, but stated Brugman could "return to work without restrictions" in two days. R. 281-82.

Brugman went to St. Luke's on April 20, 2012, after falling out of a bus and landing on her right chest, right knee, and right arm. R. 274. No fracture was definitively found. R. 277. St. Luke's instructed Brugman to monitor the pain and return for follow-up x-rays if the pain became intolerable. Id. Brugman received a prescription for 15 Percocet tablets for pain. Id. A neurological examination found no weakness nor abnormal gait and a respiratory examination found no coughing. See R. 274. Despite noting a history of asthma, the treating notes found Brugman's lungs "[c]lear to auscultation," with no wheezing. R. 275-76. Also, while noting a history of hypertension, a cardiovascular examination found a "[r]egular rate and rhythm." See id. The treating physician noted "elevated blood pressure/hypertension," but also mentioned that Brugman had not taken her medication that day. R. 277. The lack of any objective finding of

---

[3] Plantar fasciitis is the "inflammation of the plantar fascia [tissue of the sole of the foot] causing foot or heel pain." Steadman's Medical Dictionary 647, 649, 652, 1392 (27th ed. 2000) ("Steadman's").

injury from the bus fall and the fact that Brugman was "cleared to return to work without any restrictions," was accurately recounted in the ALJ's decision. R. 21, 24; see R. 278.

The ALJ also correctly described Brugman's treatment at the Ryan Community Health Center ("Ryan Center"). See R. 21-24. Brugman went to the Ryan Center on March 29, 2012, for prescription refills. R. 364-65. She said she felt well and denied shortness of breath. See R. 364. She reported her pain level as a "0," her blood pressure was 131/90, and an examination of Brugman's lungs showed no problems. Id. Brugman returned on April 24, 2012, complaining of upper right body pain after her fall from the bus. See R. 366. Brugman claimed that the doctors at St. Luke's told her she had a right side rib fracture, see id., although no such fracture had been definitively found, R. 277, and also claimed that Oxycontin helped with the pain while other prescriptions would not, R. 366. An examination of Brugman showed no shortness of breath, a good general state of health, and good exercise tolerance. Id. Brugman claimed a "10" on the pain scale and had a blood pressure of 165/99. Id. In response to Brugman's pain, the treating physician prescribed her 10 milligrams of oxycodone, to be taken every six hours. See R. 367. Brugman returned on May 22, 2012, seeking a refill and an increased dosage. R. 368. Rather than refill the prescription, the doctor at the Ryan Center prescribed Naproxen. R. 368-69.[4] Brugman claimed her pain was "marginally better and denie[d shortness of breath]." R. 368. An examination of Brugman's lungs led to unremarkable findings. See id.

Brugman went to the Ryan Center again on June 8, 2012, complaining of lower leg pain, but no back, rib, or breathing problems. See R. 370-71. Brugman again denied shortness of

---

[4] Naproxen is a "nonsteroidal anti-inflammatory analgesic agent." Steadman's, supra, at 1182. Oxycodone is a "narcotic analgesic." Id. at 1293.

breath and only complained of left lower leg pain, which she described as a "6" on the pain scale. R. 370. The physician assessed Brugman's leg as having a hematoma and contusion. R. 371.

Brugman returned to the Ryan Center on June 19, June 21, September 11, October 12, and October 16, 2012. R. 372-84. Brugman did not complain of shortness of breath at any of her visits and her respiratory examinations showed no problems. See id. At the June 21, 2012, visit, Brugman complained of extreme lower back pain. R. 374. The treating physician found Brugman's "history" of her rib injury "[in]consistent" and noted that she was asking for "pain killers." Id. Brugman claimed her pain was a "7"on the pain scale, but the physician's notes said that she appeared well. R. 375. Brugman was diagnosed with chronic pain and prescribed Tramadol. See id. The notes mentioned that Brugman exhibited possible "drug seeking behavior" and the physician refused to prescribe her any further opioids. Id. Brugman returned on October 12, 2012, because of her back pain, and sought a refill for her Tramadol prescription. R. 379. An examination found Brugman to be in a "good general state of health," and found only "[m]ild tenderness to palpation on the [r]ight lower [r]ibs." R. 379-80. On November 4, 2013, the Ryan Center referred Brugman to St. Luke's for physical therapy related to her back pain, but made no diagnosis as to the severity or limitations of that pain. See R. 401-03.

In reviewing the "contemporaneous treating notes" of the physicians at the Ryan Center, the ALJ found that they indicated that "despite [Brugman's] symptom complaints, she routinely present[ed] with unremarkable findings and has not required more than conservative pain management for any of her impairments." R. 24. There is substantial evidence in the record for this conclusion. First, as relates to Brugman's complaints of asthma-related disability, while the Ryan Center notes frequently mention that she had "mild intermittent" asthma, R. 362, 364, 366,

13

368, 370, 372, 374, 377, 379, 382, Brugman did not complain of shortness of breath and exhibited no respiratory problems on any examination, see R. 364, 366-67, 368, 370, 375, 379-80. Similarly, though Brugman visited the Ryan Center for problems with pain in her ribs and back, at no time did the Ryan Center physicians find that Brugman's pain inhibited her ability to work. See R. 364-84. Indeed, as Brugman's complaints of pain continued, her doctor's prescription strength decreased, as they feared that she was exhibiting "drug seeking behavior." See R. 375. The doctors at the Ryan Center refused to give her opioid pain killers. See R. 368-69, 375. Thus, the ALJ's decision was consistent with Brugman's treatment notes and with the "treating physician rule" in finding no debilitating effects of asthma and no functional limitations from pain.

Brugman's Harlem Hospital Center treatment records are consistent with the ALJ's findings. Notes from a February 6, 2012, visit state that, while Brugman complained of back pain, a review of Brugman's past "CTs, Sonograms, and MRIs" showed "no clear cause of pain." R. 299-300. Brugman next presented to Harlem Hospital on May 3, 2012, complaining of pain due to a "fractured rib" which she sustained in April 2012. R. 294. This appears to refer to the fall from the bus for which Brugman had previously obtained pain medication just days before from St. Luke's and the Ryan Center. See R. 274, 277, 366-67. As already noted, doctors could not determine that Brugman had sustained a fractured rib in the bus incident. See R. 277. A June 14, 2012, visit similarly reflected complaints of rib pain, though Brugman stated she had not been taking her pain medication. R. 286. The ALJ was thus correct in describing Brugman's May 3, 2012, visit to Harlem Hospital as evidencing "normal physical examination findings except for tenderness in the rib cage." R. 22. The ALJ also correctly described the June 14, 2012, visit as indicating only bruising and noted that Brugman was discharged with only a

prescription for Motrin. See id.

With respect to Brugman's back or rib pain, the ALJ correctly noted that, despite Brugman's complaints of back pain or rib pain, the "diagnostic studies [were] unremarkable and the only consistent clinical finding in the record [was] tenderness to palpation." R. 23. The ALJ also noted that Brugman's pain symptoms had been treated conservatively with Naproxen or Tramadol, other than a brief period of oxycodone prescriptions which doctors later terminated. See id.; see also R. 368, 375. Further, Brugman's self-described activities of daily life, R. 160-62, indicated that she was capable of self-care and could walk, shop, cook, do laundry, and socialize at church and the movies, R. 23 (citing R. 160-62). These statements could properly be seen as inconsistent with Brugman's testimony at the hearing that she could only walk half a block. See R. 42. The ALJ also noted that Brugman was seeking employment between December 2011 and March 2012. R. 23-24. The ALJ noted that this fact weighed on Brugman's credibility as to being disabled since November 2011. R. 24. Finally, the ALJ recognized that Brugman's arriving at both the consultative examination and the ALJ hearing without a cane undercut Brugman's allegations of impairment necessitating the use of a cane. Id.

As for her asthma, the record contains substantial evidence to support the ALJ's decision that Brugman was not disabled due to this condition, R. 20-21, 23, as she consistently denied having shortness of breath at nearly every doctor's visit, and examinations of her lungs showed nothing abnormal, R. 294-95, 297-98, 364, 366-67, 368, 370, 375, 379-80. Despite Brugman's claims that she could barely walk a block due to her asthma, R. 39, her treating physicians consistently found that her asthma was "mild" and "intermittent," and her lungs clear, see R. 294, 300, 362, 364, 366-67, 368, 370, 372, 374-75, 377, 379-80, 382. The ALJ properly considered this in determining that Brugman's complaints of asthma-related limitations were not

credible. R. 23.

While Brugman testified that her medication made her tired, R. 39, we have not found any indication in the records of her treatment that Brugman made any such complaint and, indeed, she denied being fatigued on several occasions, see, e.g., R. 221, 274, 348. After the ALJ's decision, Brugman supplied the Commissioner a report from a social services agency, FEGS, in which Brugman complained of being tired, feeling depressed, having little interest in doing things, and having little energy. R. 404-05, 412.[5] However, this report appears to be generated based entirely on Brugman's subjective complaints. R. 412-13. Notably, in another document, Brugman reported that she liked to "walk in Central Park . . . for exercise" and would walk from her home on 100th Street, R. 33, "to 110th Street and back," R. 167.

Brugman was referred to Dr. Shannon Gearhart for a consultative examination on November 14, 2012. R. 385. Dr. Gearhart noted Brugman's high blood pressure, but stated that she was in "no acute distress." R. 387. At the examination, Brugman's gait was "mildly antalgic,"[6] but she could walk on her "heels without difficulty." Id. While Brugman arrived at the examination without a cane, Dr. Gearhart opined that a cane was "medically necessary" in light of Brugman's "mildly abnormal unassisted gait." Id. Dr. Gearhart's examination of Brugman's lungs found them "[c]lear to auscultation," with no abnormal findings. See id. Brugman's neurologic examination found her with five-out-of-five strength in her upper and lower extremities. R. 388. Brugman's hand and finger dexterity were "intact" and her grip strength was five-out-of-five. Id.

---

[5] FEGS refers to the Federation Employment and Guidance Service, a "nonprofit health and human services organization." See Mora v. Comm'r of Soc. Sec., 2015 WL 4139341, at *6 (E.D.N.Y. July 8, 2015).

[6] Antalgic means "[c]haracterized by reduced response to painful stimuli." Steadman's, supra, at 67, 94.

Dr. Gearhart found only "mild to moderate restrictions for heavy lifting, carrying, pushing, and pulling" and "mild to moderate restrictions for squatting, kneeling, climbing, going up and down stairs, and prolonged walking, standing, and sitting." R. 389. Dr. Gearhart also recommended "avoid[ing] smoke, dust, and other known respiratory irritants." Id. The ALJ gave these findings considerable weight. See R. 24. Further, a lumbosacral spine x-ray found no abnormality, R. 391, and a left knee x-ray showed only mild degenerative joint disease and mild joint space narrowing, R. 392.

In declining to accept Dr. Gearhart's opinion that Brugman required a cane, the ALJ relied on the fact that no treating physicians had ever prescribed a cane. See R. 24. As the ALJ noted, "there is no medical evidence in the treating record documenting the need for a hand-held assistive device to aid the claimant in walking." Id. Indeed, neither Dr. Gearhart nor the ALJ saw Brugman use the cane, and Brugman consistently failed to actually use it. See R. 20, 24, 42, 387. In the "Function Reports," which Brugman and her mother filled out, neither mentioned that Brugman needed a cane. R. 163, 185. A June 10, 2014, third-party Function Report similarly failed to list that Brugman used a cane. R. 211. Thus, the ALJ could properly conclude that Brugman did not require a cane.

In light of the evidence in the record, the ALJ could also properly determine that Brugman's testimony regarding her pain and other limitations was not credible, and that she had the functional capacity to perform light work, which included only occasional stooping and occasional exposure to respiratory irritants. R. 20. No treating physician listed limitations in Brugman's daily activities and on several occasions, after she complained of pain or other symptoms, doctors released Brugman with no or minor work-related restrictions. See R. 278, 389; see also R. 281-82. Whereas Dr. Gearhart's analysis partly contradicted the ALJ's finding

that Brugman could "balance and ambulate on level surfaces without an assistive device," see R. 20, 387, as discussed above there was ample treating-physician evidence that supported the finding that Brugman did not require a cane to walk.

Substantial evidence thus supported the ALJ's finding that Brugman could "stand or walk for six of eight hours in a work day, frequently lift and carry objects weighing 10 pounds, occasionally lift and carry up to 20 pounds, push/pull to her lifting/carrying capacity, and balance and ambulate on level surfaces without an assistive device." R. 20.

Relying on the Dictionary of Occupational Titles, the ALJ found that Brugman could perform her past work as a sales attendant, pharmacy technician, cashier, and hotel clerk. R. 25. All four positions require only light exertion, occasional or no stooping, and minimal lifting.[7] In particular, hotel clerk requires no stooping, kneeling, crouching, balancing, or climbing. Dictionary of Occupational Titles, Code 238.367-038, 1991 WL 672211. Given the lack of any documented limitations in the medical record, the ALJ's findings were supported by substantial evidence.[8]

---

[7] See Dictionary of Occupational Titles, Code 074.382-010, 1991 WL 646728 (Pharmacy Technician); Dictionary of Occupational Titles, Code 211.462-010, 1991 WL 671840 (Cashier II); Dictionary of Occupational Titles, Code 238.367-038, 1991 WL 672211 (Hotel Clerk); Dictionary of Occupational Titles, Code 299.677-010, 1991 WL 672643 (Sales Attendant).

[8] We have also examined whether the Commissioner complied with her duty to develop the record. See 42 U.S.C. § 423(d)(5)(B). We note that there is a document indicating that Brugman visited St. Luke's Ambulatory Care unit in February 2013 complaining of severe back pain and that she was referred for an MRI. See R. 395, 398-99. There are no additional records. Brugman did not identify this specific visit at the hearing, but it is reasonably likely that this visit was one of the emergency room visits Brugman testified to that preceded her partial hysterectomy. See R. 44-45 (Brugman testified she made emergency room visits for back pain for two years, that she was referred for an MRI and CT scan, and that the problem turned out to be a cyst requiring a hysterectomy, which was performed in May 2013). Accordingly, we do not believe the ALJ failed to discharge her duty to develop the record with respect to this visit.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 12) should be granted.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. P. Kevin Castel at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Castel. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 9, 2017
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to

Merle Brugman
55 West 100th Street
Apt. 9G
New York, NY 10025

Counsel by ECF